Joseph **LEWIS, Avis Lewis, Jeaneane Lewis, individually and by her parents Joseph Lewis and Avis Lewis; Mellonie Lewis, individually and by her parents Joseph Lewis and Avis Lewis, and Carmen Paulino, individually and by her parents Martin Paulino and Therese Paulino, Plaintiffs,**

v.

THE **CITY OF MOUNT VERNON, MOUNT VERNON POLICE DEPARTMENT; Ralph Fatigate, individually and in his official capacity as Commissioner of the Mount Vernon Police Department; Michael Mosca, individually**

and in his official capacity as a Captain in the Mount Vernon Police Department; Robert Kelly, individually and in his official capacity as a Lieutenant in the Mount Vernon Police Department; Richard Morra, Shield # 34; Detective Michael LaRotunda, Shield # 19; Detective Mario Manganiello, Shield # 10; P.O. Courtney Besley, Shield # 107; Detective Thomas Luisa, Shield # 7; and Detective Sergeant Angelo R. Fuccillo, Shield # 3, each individually and in their respective capacities as officers of the Mount Vernon Police Department, Defendants.

No. 95 CIV. 4140(BDP).

United States District Court,
S.D. New York.

Nov. 13, 1997.

Mary D. Dorman, New York, NY, for Plaintiffs.

Douglas J. Martino, Martino & Weiss, Mount Vernon, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

## INTRODUCTION

Plaintiffs have brought this action pursuant to 42 U.S.C. § 1983 and related state laws, alleging violations of their Fourth Amendment right to be free from unreasonable searches and seizures. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56., in part on the basis of qualified immunity. For the reasons stated herein, defendants' motion for summary judgment is granted.

## BACKGROUND

This case arose from the execution on July 14, 1994 of a "no knock" search warrant by members of the Mount Vernon, New York police department at an apartment in a multifamily building. The officers searched the home of plaintiffs Joseph Lewis and Avis Lewis and their family, who occupied a first floor apartment at 318 South Sixth Avenue, a three story building with one apartment on each floor. The Lewis family was not the focus of the investigation that led to the issuance and execution of the search warrant. Nor was any member of their family involved in any criminal activity.

The target of the search was the apartment used by an individual named Charles Bowen, whom Mount Vernon police reasonably believed was engaged in drug trafficking. Contrary to the information obtained by the police and upon which they and the magistrate relied, however, it appears that at the building in which the Lewis family lived, Bowen was connected to the second floor apartment, not the first floor apartment. The primary issue on this motion is whether the officers' reliance on erroneous information in obtaining and executing the warrant authorizing the search of the Lewis' apartment means that the officers are not entitled to qualified immunity. The facts, which are not substantially in dispute, follow.

The search grew out of a narcotics investigation by the Mount Vernon police department that focused on Charles Bowen, whom the police suspected of involvement in the distribution of large quantities of cocaine. Two individuals had separately linked Bowen to 318 South Sixth Avenue. One of these individuals was a confidential informant, who had previously assisted the Mount Vernon police department in successful investigations of illegal drug activity. The informant told Detective Morra that he knew Bowen and that Bowen used 318 South Sixth Avenue, where his girlfriend lived, as one of his residences and as a base for his drug activity. In addition, the informant indicated that Bowen drove a green Ford Mustang convertible, bearing North Carolina license plate HSH8548.

The other individual linking Bowen to 318 South Sixth Avenue was DeAndre Harris, whom the Mount Vernon police were holding on an outstanding warrant issued in connection with a murder in Maryland. Harris, whom Detective Morra had known since 1991, told Morra that he knew Charles Bowen and could provide detailed information about Bowen's criminal activities. Harris did not know the exact address of the house from which Bowen coordinated many of his drug activities, but he did describe its location and identified the street as South Sixth Avenue. Detective Morra then accompanied Harris to South Sixth Avenue, where Harris pointed out 318 South Sixth Avenue as the house from which Bowen operated. Photographs of the house provided in connection with the summary judgment motion indicate three mail boxes in front of the house and three separate bells on the frame of the exterior door.

On July 13, 1994, Harris gave a detailed written statement regarding Bowen's drug activities at 318 South Sixth Avenue. Harris' statement indicated that the previous day, July 12, 1994, he had accompanied Bowen in a Green Ford Mustang from a nearby playground to 318 South Sixth Avenue, where two women, who appeared to be in their twenties, greeted them. According to Harris' written statement, Bowen and Harris entered the first floor apartment, and then went into the basement where Bowen displayed to Harris a brick-sized package of what appeared to be cocaine and stated that he had 30 kilograms of cocaine which he planned to transfer to North Carolina within the week.

Based on a photograph provided by the Greensboro, North Carolina police department, both Harris and the informant positively identified Bowen. Mount Vernon police also confirmed that Bowen may have been involved in prior drug activity, having been arrested in North Carolina in 1991 for possession of crack cocaine with intent to distribute. Morra had also observed the green Ford Mustang parked in front of 318 South Sixth Avenue.

With this information in hand, the next morning, July 14, 1994, members of the Mount Vernon police department established surveillance of 318 South Sixth Avenue and Detective Morra prepared an application for a search warrant. The application described the information independently provided by the informant and by Harris, and included a copy of the sworn statement signed by Harris. The application also noted Morra's observations of the green Mustang in front of the building. The information supplied by Harris was the only information linking Bowen to the first floor apartment, rather than to the building generally. The Administrative Guidelines of the Mount Vernon police governing the use of confidential informants classify "wanted persons" as a precluding characteristic, making it undesirable to use such persons as informants except in extraordinary circumstances.

At approximately 9 p.m. that evening, the surveillance team observed Bowen exiting 318 South Sixth Avenue and entering the Ford Mustang. The vehicle was stopped and Bowen was taken into custody for questioning. However, because the police did not at that time have a warrant for the search of the vehicle, they allowed Bowen to leave it parked and locked.

That same day a Mount Vernon City Court Judge reviewed the warrant application, including a supplemental affidavit Detective Morra had completed after conferring with an Assistant District Attorney about the appropriateness of requesting a "no knock" provision in the warrant. In the warrant application, the only areas of 318 South Sixth Avenue that Detective Morra requested authorization to search were the first floor and the basement. The supplemental affidavit also included the request for authorization to search the green Ford Mustang.

The Judge approved the application and granted a "no knock" warrant that authorized the search of 318 South Sixth Avenue, first floor and basement, at any time of day or night. The "no knock" provision was included based on allegations that the evidence sought could be quickly disposed of and that any occupants of the premises could be armed and dangerous, given the nature and magnitude of the drug activities under investigation. The warrant also authorized the

search of Bowen and the green Ford Mustang.

A few minutes after 10 p.m. on July 14, 1994, a dozen or more members of the Mount Vernon Police Department executed the warrant at 318 South Sixth Avenue. As allowed by the warrant, the officers entered the first floor unit without knocking and with guns drawn. Once inside, the officers found the Lewis' teenage niece, Carmen Paulino, reclined on the couch. The officers ordered her to lie on the floor. The Lewis' two children, Mellonie and Jeaneane, were sleeping in a bedroom. The officers woke them and brought them into the living room. The children were terrified. Their father, Joseph Lewis, who had been in his bedroom, was handcuffed and not allowed to see to his children. The children's mother, Avis Lewis, was not home during the initiation of the search. At approximately 10:30, she returned home and was barred from entering the apartment or comforting her children until the conclusion of the search.

The officers searched the house thoroughly but did not seize any items of evidence. No one was arrested. The apartment was left in disarray. The entire incident lasted approximately one hour.

## DISCUSSION

### SUMMARY JUDGMENT

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). This Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Hayes*, 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir. 1996).

### QUALIFIED IMMUNITY

■ Qualified immunity entitles police officers to be shielded from liability for damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known, *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir.1996); *Lennon v. Miller*, 66 F.3d 416 (2d Cir.1995); *Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir.1992); *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991), or unless it was objectively unreasonable for the officers to believe that their conduct did not violate those rights. *Anderson v. Creighton*, 483 U.S. 635, 638– 639, 107 S.Ct. 3034, 3038–3039, 97 L.Ed.2d 523 (1987); *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir.1994).

■ The requirement of a clearly established right means that the inquiry to ascertain whether qualified immunity is available differs from the inquiry into whether the Fourth Amendment may have been violated. Actions that violate the Fourth Amendment do not necessarily deprive police officers of the defense of qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 643, 107 S.Ct. 3034, 3040–3041, 97 L.Ed.2d 523 (1987); *see Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (noting that qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."); *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738 (explaining that if the right the official violated was not clearly established at the time of the violation the defense of qualified immunity

should prevail); *Velardi*, 40 F.3d at 575–576 (upholding the defense of qualified immunity without determining whether the warrant at issue was consistent with the Fourth Amendment). To defeat the defense of qualified immunity, the right alleged to have been violated must be clearly established at a level of specificity such that "a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

This summary judgment motion presents two primary issues, one relating to the validity of the warrant, the other relating to the execution of the warrant.

## VALIDITY OF THE WARRANT

■ A search warrant issued by a neutral magistrate, upon a finding of probable cause, must be afforded great deference and creates a presumption that the officers executing the warrant acted in an objectively reasonable fashion. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991). The Supreme Court has held that the validity of a warrant is not impaired if it is based on seemingly reliable information which is later found to be erroneous. *Illinois v. Rodriguez*, 497 U.S. 177, 184, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148 (1990). Negligent or otherwise innocent misstatements or omissions in a warrant application do not invalidate the warrant so long as the incorrect or omitted information does not evidence a reckless or intentional disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978).

■ Consequently, in order to defeat qualified immunity, plaintiffs must show that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false statements in, or omitted material facts from, the affidavit, and that the false statements or material omissions were necessary to the finding of probable cause. *Velardi*, 40 F.3d at 573; *Golino*, 950 F.2d at 870. The "validity of the warrant must be assessed on the basis of information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Maryland v. Garrison*, 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). Defendant officers should only be deprived of immunity "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. at 341, 106 S.Ct. at 1096.

■ Plaintiffs allege that Detective Morra's warrant application and affidavit misled the magistrate by describing 318 South Sixth Avenue as a "house" or "dwelling" and not by explicitly stating that the building contained three units, information the officers knew or should have known as a result of their observation of the building. This omission or mischaracterization is not material, however, because in the circumstances of this case it could not plausibly have altered the magistrate's determination that probable cause existed. Probable cause to search the first floor apartment would have still existed had Detective Morra's affidavit described the building as containing three units, one on each floor. Because Detective Morra only requested authorization to search the first floor and the basement of the building, the fact that his affidavit did not mention that there were other apartments on the second and third floors of the building is immaterial.[1]

■ Omissions or mischaracterizations are material if they cause the warrant to encompass additional premises as to which there is no probable cause, thus making the warrant overbroad. *See Maryland v. Garrison*, 480 U.S. at 85, 107 S.Ct. at 1017 (noting that a factual mistake as to a building's floor plan may make a warrant overbroad by encompassing areas for which there is no probable cause to search). In this case, however, the problem is not that the warrant identified too broad an area to be searched, but rather that the warrant, as a result of erroneous

---

**1.** A different question would be presented, of course, if Detective Morra had requested authori-

zation to search the entire building.

information, identified the wrong area to be searched. The failure to state explicitly that the building contained three units did not cause the warrant to be overbroad and thus did not vitiate the magistrate's probable cause determination. In sum, Detective Morra's arguable mischaracterization of the building does not invalidate the search warrant. *See Rivera v. United States,* 928 F.2d 592, 604 (2d Cir.1991) (noting that courts should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than commonsense, manner) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) (internal citations omitted)). Nor does the arguable mischaracterization of the building permit any plausible inference of conscious wrongdoing or reckless disregard for the truth by Detective Morra. There is no evidence that Detective Morra referred to 318 South Sixth Avenue as a "dwelling" or a "house" rather than a three family apartment building in order to bolster his affidavit or deceive the magistrate. There was no apparent reason for Detective Morra to attempt to conceal the fact that the building contained three units since disclosure of that fact would not have altered the magistrate's probable cause determination.

■ Plaintiffs also note that Bowen was linked to the first floor of 318 South Sixth Avenue, rather than simply to the building itself, by only one piece of evidence, the statement by DeAndre Harris, an individual in custody on serious unrelated charges, whose credibility, under Departmental regulations, was suspect. However, the validity of the probable cause determination and the issuance of the warrant does not turn on the strength of one piece of evidence viewed in isolation, but on the totality of the evidence presented to the magistrate. *Rivera,* 928 F.2d at 602.

■ Here, the constellation of evidence presented to the magistrate established probable cause. The statements of DeAndre Harris and the informant were independently obtained. The information Harris provided, although ultimately found to be erroneous, was consistent with the information previously provided by the informant.

Harris, for example, identified the same building and the same vehicle that the informant had previously linked to Bowen. Further, Detective Morra's sighting of Bowen's car at 318 South Sixth Avenue and the positive identification of Bowen by Harris and the informant all were consistent with Harris' statement that Bowen's girlfriend lived in, and he used, the first floor apartment. The evidence, taken as a whole, indicates that the police were reasonable—albeit mistaken—in believing that the suspect, Charles Bowen, was linked to the first floor of 318 South Sixth Avenue. Thus, Detective Morra's conduct in procuring the search warrant does not indicate an intentional or reckless disregard for the truth and the officers' reliance on the warrant was not unreasonable. This conclusion, as previously noted, is buttressed by the fact that substantial deference is to be accorded a magistrate's independent probable cause determination. *Golino,* 950 F.2d at 870–871.

## EXECUTION OF THE WARRANT

A more substantial question is posed by the claim that the officers' execution of the warrant violated plaintiffs' clearly established constitutional rights. Plaintiffs have offered evidence that suggests that shortly after the initiation of the search some of the officers began to notice discrepancies between the apartment they entered and the information they had been provided. Certain of the officers admitted in deposition testimony that the Lewis' apartment did not conform to the floor plan described by DeAndre Harris. At least one of the officers knew immediately that the structure was built on a "slab" and therefore did not have a basement, contrary to the information provided by Harris. Other officers realized within the first ten minutes that the building had no basement.

■ The general Fourth Amendment principle that officers may not remain at a premises without the occupants' consent if there is no probable cause justifying their presence is clearly established. *See Maryland v. Garrison,* 480 U.S. at 87, 107 S.Ct. at 1018 (officers must discontinue search of premises erroneously included within scope of warrant due to erroneous belief that a

floor of a building contained one apartment rather than two).

■ There is no bright line rule, however, as to what discrepancies between the premises identified in the warrant and the premises encountered by the officers are significant enough to alert the officers that the warrant identifies the wrong location and to require their immediate departure. This problem arises because information that may be sufficient to establish probable cause may nonetheless not be accurate in all respects. In this case, there is no evidence that the officers unreasonably continued to search after they knew they were in the wrong apartment. The officers vacated the premises shortly after the conclusion of the search and they did not unreasonably prolong the search after they determined that they had entered the wrong apartment. The officers' belief that the continuance of the search would not violate the Fourth Amendment rights of the occupants of the premises was not objectively unreasonable.

■ The manner in which the officers conducted the search was also reasonable. The officers' detention of the occupants of the apartment pending the outcome of the search was warranted, as officers have a right to detain occupants of a premises being searched irrespective of individualized suspicion. *Rivera*, 928 F.2d at 606; *Crosby v. Hare*, 932 F.Supp. 490, 493 (W.D.N.Y.1996); *United States v. Nelson*, 931 F.Supp. 194, 201 (W.D.N.Y.1996). The officers' unannounced entry into the apartment at night was authorized by the warrant and approved by the magistrate. *See United States v. Brown*, 52 F.3d 415, 420–424 (2d Cir.1995) (upholding an unannounced entry in a search for illicit drugs and where the occupants may have been armed). Plaintiffs note that the officers had their guns drawn, which, again,

is to be evaluated not in light of innocent families' likely reaction, but in light of the nature of the criminal activity on the basis of which the warrant was issued. The officers' conduct in this regard was, again, objectively reasonable.

Plaintiffs also claim that their apartment was ransacked. However, plaintiffs have presented no evidence that the officers wantonly damaged or destroyed property or conducted the search in a manner inconsistent with its professed purpose of finding illicit drugs. Rather, the only inference that can be drawn is that the officers conducted a thorough search, as they are permitted to do in executing a warrant.

■ The sudden nighttime intrusion into this family's home of a dozen or more armed police officers was no doubt a terrifying and unfortunate experience. The Lewis family was blameless; they neither committed, nor were suspected of, any wrongdoing. But their blamelessness is not the standard by which the officers' conduct is measured. In retrospect, it is clear, as plaintiffs point out, that different steps might have prevented the erroneous search. In evaluating the individual defendants' qualified immunity claim, however, the standard is not whether the officers' conduct could have been improved upon. Rather, the question is whether it was reasonable for the officers—and the magistrate—to have concluded that the issuance and execution of the warrant did not violate the Fourth Amendment.[2] We hold that it was and that the officers are entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. Since plaintiffs' federal law claims have been dismissed before trial, the remaining state

---

**2.** In this case, there has been no showing that any custom or policy of the City of Mount Vernon or of the Mount Vernon Police Department contributed to the mistaken search of the Lewis' apartment. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Department of Social Sers.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Neighbour v. Covert*, 68 F.3d 1508, 1511–1512 (2d Cir.1995), *cert. denied*, 516 U.S.

1174, 116 S.Ct. 1267, 134 L.Ed.2d 214 (1996) (all requiring in a § 1983 action the existence of a municipal custom or policy that caused the plaintiffs to be deprived of their rights). In addition, the Mount Vernon Police Department, as an agency of the municipality, is not a "suable entity" under § 1983. *See Orraca v. City of New York*, 897 F.Supp. 148, 151–152 (S.D.N.Y.1995) (finding the municipal police department not to be a suable entity under § 1983).

law claims are dismissed as well. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, the state law claims are dismissed without prejudice.

**SO ORDERED.**