**Shannon MALATESTA and Anthony Malatesta, Plaintiffs,**

v.

**NEW YORK STATE DIVISION OF STATE POLICE; Superintendent James W. McMahon; State of New York; Town of North Greenbush; John J. Ogden, Jr.; William Gonzales; Gary Kelly; George Addis; Eric Moore; and Robert Ashe, Defendants.**

**No. 97–CV–1833.**

United States District Court,
N.D. New York.

Nov. 7, 2000.

---

David Brickman, Albany, NY, for Plaintiff Shannon Malatesta.

Hon. Eliot Spitzer, Attorney General of the State of New York, Attorney for Defendants Ogden, Gonzalez, Kelly, Addis and Moore, Department of Law, Albany, NY, Mirriam Z. Seddiq, Bruce D. Feldman, Asst. Attorneys General, of counsel.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On December 16, 1997, plaintiff Shannon Malatesta ("Malatesta") and her husband Anthony Malatesta, commenced the instant action against defendants State of New York, New York Division of State Police, Eric Moore, Robert Ashe, Town of North Greenbush, Gary Kelly, William Gonzalez, John J. Ogden, Nicholas Georgeadis,[1] and James W. McMahon, pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, alleging that the defendants violated their rights under the Fourth and Fourteenth Amendments to the Constitution of the United States of America. Anthony Malatesta subsequently withdrew as a plaintiff, discontinuing his claims with prejudice.[2] The defendants State of New York, New York Division of State Police, and James W. McMahon were dismissed by court order on March 25, 1999. (Doc. No. 28). Malatesta also stipulated to dismissal with prejudice of her claims against defendants Robert Ashe, Town of North Greenbush, William Gonzales, Nicholas Georgeadis, and Eric Moore, (Doc. Nos. 21 and 42); leaving only her claims against defendants John J. Ogden ("Tpr.Ogden") and Gary Kelly ("Inv.Kelly").

Tpr. Ogden and Inv. Kelly now move for summary judgment on all claims against them, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. Oral argument was heard on May 25, 2000, in Albany, New York. Decision was reserved.

## II. FACTS

This action arises out of events occurring at the Malatesta residence in the Town of North Greenbush, New York. On or about December 3, 1997, Thomas Mahan ("Mahan"), Anthony Malatesta's grandfather, entered the New York State Police barracks in East Greenbush, New York, seeking to obtain assistance in repossessing his pickup truck from his grandson. According to Mahan, he had loaned his truck to his grandson, Anthony Malatesta, approximately one year earlier; his grandson now refused to return it, and had threatened him with bodily harm if he attempted to repossess it. Trooper Nicholas Georgeadis ("Tpr.Georgeadis") and Tpr. Ogden informed Mahan that he could either have his grandson arrested or retrieve the truck himself while troopers stood by to insure that there was no breach of the peace—a procedure known as a "civil standby." Mahan left the barracks to consider his options.

On December 6, 1997, Mahan returned to the East Greenbush barracks. He informed Troopers Ogden and Georgeadis that he had arranged for a tow truck operator to go with him to the Malatesta residence, and requested that the troopers accompany them in order to prevent a breach of the peace. They agreed to perform a civil standby. Mahan then drove to

---

1. Plaintiffs incorrectly named New York State Police Trooper Nicholas Georgeadis as defendant "George Addis" in their complaint.

2. Though no stipulation regarding the withdrawal of Anthony Malatesta was ever filed with the Court, both sides agree that Anthony Malatesta did withdraw from this action following his deposition in December of 1998.

the Malatesta residence in his own vehicle, followed by the tow truck and the troopers in a marked New York State Police cruiser.

Upon arriving at the Malatesta residence, the troopers observed what appeared to be Mahan's pickup truck parked behind the Malatesta trailer home. While Tpr. Ogden went to announce their presence to plaintiff, the tow truck operator went to the pickup truck to compare the vehicle identification number ("VIN") with that on the vehicle registration provided by Mahan. The tow truck operator observed that the VIN tag had apparently been removed from the dashboard of the pickup truck, and that there appeared to be metal shavings around the area where the VIN should be. The tow truck operator informed the troopers of this fact. The troopers walked to the truck and looked in the windshield to confirm that the VIN tag had, in fact, been removed.

Because it is a felony to remove a VIN tag from a motor vehicle in New York, the troopers contacted two inspectors from the New York State Police Bureau of Criminal Investigations. After conferring with the inspectors, the troopers informed plaintiff that the truck, which was not the Mahan truck, but actually belonged to Anthony Malatesta, was to be seized as contraband.

Tpr. Ogden returned to the State Police barracks and spoke with New York State Police Investigator Kelly. Inv. Kelly drafted a search warrant to search the Malatesta property for the VIN tag and the tool used to remove it. The warrant was issued by Poestenkill Town Justice Marie Hoffman, and executed by Troopers Ogden and Georgeadis, and Inv. Kelly.

On December 9, 1997, while executing this search warrant at the Malatesta property, the troopers and Inv. Kelly observed property which they believed to be stolen. Based on the observation of stolen property, the search was halted while Inv. Kelly returned to Justice Hoffman and requested that the previously issued search warrant be amended to permit the police to search the Malatesta premises for stolen property, and to seize the same. Justice Hoffman amended the search warrant as requested by Inv. Kelly.

The search resumed pursuant to the amended warrant, and disclosed various items of stolen property on the Malatesta property, as well as the VIN tag that had been removed from the pickup truck. Plaintiff and her husband were arrested and subsequently indicted by a Rensselaer County Grand Jury on various criminal charges stemming from the illegal VIN tag and possession of the stolen property.[3]

## III. STANDARD OF REVIEW

### A. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202

**3.** On October 8, 1998, a state court judge suppressed all evidence flowing from the original "civil standby" entry, determining that this entry was illegal, and that all evidence stemming from that entry should be suppressed under the "fruit of the poisonous tree" doctrine. To the extent that plaintiff may be arguing that this Court should give *res judicata* effect to the state court's finding that the initial entry was unlawful, that determination is not entitled to any preclusive effect in the instant proceeding because (1) the defendants were not a party to that prior proceeding; (2) the state and federal law at issue is not the same; and (3) the issues raised by the instant motion are not the same as those in the suppression hearing.

(1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### B. *42 U.S.C. § 1983*

■ To recover damages under 42 U.S.C. § 1983, plaintiff must show that: (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) such "conduct deprived [plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Greenwich Citizens Comm., Inc. v. Counties of Warren and Washington Indus. Dev. Agency*, 77 F.3d 26, 29–30 (2d Cir.1996) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

### C. *42 U.S.C. § 1985*

■ To recover damages under 42 U.S.C. § 1985, plaintiff must prove that defendants (1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities un-

der the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States. *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

### IV. DISCUSSION

#### A. *Section 1983 Claims*

Defendants argue that the plaintiff's § 1983 claims must be dismissed because (a) the evidence demonstrates that the December 6, 1997 entry onto her property was not an unlawful warrantless "search"; and (b) even assuming the December 6, 1997 entry did constitute a search, the defendants are entitled to qualified immunity for their actions.[4]

Plaintiff's opposition to the instant summary judgment motion appears to be predicated on the theory that both the December 6, 1997, entry onto her property, and the subsequent search and seizure of stolen property and arrest of plaintiff and her husband on December 9, 1997, pursuant to a lawfully issued search warrant, were illegal searches and seizures in violation of the Fourth Amendment. Plaintiff's theory appears to be that defendants used the initial search of their property and the resulting discovery of a vehicle with the VIN removed as a pretext to obtain search warrants that would permit the defendants to search the Malatesta residence for other items of property which Inv. Kelly suspected had been stolen by Anthony Malatesta.[5]

---

**4.** Defendants argue that the initial "civil standby" entry was an exercise of the New York State Police's public protection function, and was not related to any investigatory purpose. *See Penfield v. Venuti* 93 F.R.D. 364, 366–67 (D.Conn.1981) (discussing the "community caretaking" role of local police). Because the Court finds that the defendants are entitled to qualified immunity for their conduct in this case, it is not necessary to determine whether the initial entry constituted an

unlawful search under the Fourth Amendment, and the Court assumes for purposes of this motion that the initial December 6, 1997 entry did constitute such a search.

**5.** It is difficult for the Court to determine the exact contours of plaintiff's arguments in this case, because plaintiff has apparently submitted her brief from the prior state court suppression hearing (with minimal modification) as her opposition to the instant motion.

#### 1. *December 6, 1997*

 Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Government actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. Even where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged act. *Anderson,* 483 U.S. at 641, 107 S.Ct. 3034; *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (citing *Malley v. Briggs,* 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The defendants are entitled to immunity under this objective reasonableness standard if "officers of reasonable competence could disagree" on the legality of the defendants' actions. *Malley,* 475 U.S. at 341, 106 S.Ct. 1092; *see also Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991).

 In the instant case, " 'officers of reasonable competence could disagree' on the legality of the defendant[s'] actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The extent to which police officers can act to prevent a breach of the peace at the scene of a self-help repossession is less than clear. *See Griffin v.*

Stanek, 1997 WL 394660, *3–*5 (N.D.N.Y. 1997). Furthermore, neither party has cited a case which directly addresses the constitutionality of a "civil standby." This fact, coupled with the fact that the New York State Police have had a long-standing practice of performing civil standbys to prevent breaches of the peace during private repossessions, demonstrates that reasonable police officers could disagree over the lawfulness of the December 6, 1997, entry onto plaintiff's property. Accordingly, the remaining defendants are entitled to qualified immunity for this conduct.

#### 2. *December 9, 1997*

 In addition to contesting the lawfulness of the initial December 6, 1997, entry onto her property by Troopers Ogden and Georgeadis, plaintiff appears to be arguing that the subsequent searches and seizures by Inv. Kelly, and Troopers Ogden and Georgeadis on December 9, 1997, pursuant to the judicially issued search warrants, were unlawful. Plaintiff seeks to impose liability on defendants for these searches and seizures either because these searches were the "fruit of the poisonous tree," [6] or because the search warrants were obtained as a pretext to permit Inv. Kelly to search the Malatesta residence for stolen property.

 Notwithstanding the fact that the state court judge suppressed the evidence obtained from the searches of the Malatesta property, the remaining defendants are entitled to qualified immunity for their conduct. A search warrant issued by a neutral and detached magistrate creates a presumption that the officers executing the warrant acted in an objectively reasonable fashion. *Leon,* 468 U.S. at 913–14, 104 S.Ct. 3405; *Golino,* 950 F.2d at 870; *Lewis*

---

**6.** Plaintiff's argument based on the fruit of the poisonous tree doctrine has been expressly repudiated by the U.S. Supreme Court. *See United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search 'work[s] no new Fourth Amendment wrong.' ") (quoting *United States v. Calandra,* 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).

*v. City of Mt. Vernon,* 984 F.Supp. 748, 754 (S.D.N.Y.1997). Accordingly, unless this presumption is rebutted by plaintiff, defendants are entitled to qualified immunity for their conduct in executing the warrants on December 9, 1997.

In order to overcome this presumption of objective reasonableness, plaintiff must show that Inv. Kelly knowingly, intentionally, or recklessly made false statements or omitted material facts from the affidavits upon which Poestenkill Town Justice Hoffman relied in finding probable cause to issue and amend the search warrants on December 9, 1997. *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994); *Lewis,* 984 F.Supp. at 754. Plaintiff has offered no evidence of false statements or omitted material facts in her opposition to the instant motion. Instead, plaintiff seeks to infer from the scope of the initial warrant that it was unreasonable for Inv. Kelly to seek a warrant to search for the tool used to remove the VIN tag. In other words, his underlying motive must have been to violate her constitutional rights. Plaintiff's argument is misplaced.

■ Where, as here, a neutral and detached magistrate has found probable cause for the issuance of a search warrant, the subjective motives of the police officers executing the warrant are simply not relevant. In evaluating the reasonableness of police conduct under the Fourth Amendment, the objective circumstances must be viewed rather than an officer's subjective motivation. *See, e.g., Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) (subjective intent does not make Fourth Amendment action unconstitutional "as long as the circumstances, viewed objectively, justify that action."); *Bradway v. Gonzales,* 26 F.3d 313, 319 (2d Cir.1994) ("In evaluating the legitimacy of police conduct under the Fourth Amendment, we look to objective circumstances rather than an officer's subjective motivation."). Therefore, plaintiff's attempt to overcome the presumption of objective reasonableness based on Inv.

Kelly's alleged subjective motivation is unavailing.

### 3. *Conclusion*

Accordingly, because reasonable officers could disagree as to the legality of the civil standby on December 6, 1997, and because plaintiff has failed to rebut the presumption of reasonableness of the December 9, 1997 searches and arrests which flowed from the issuance of a warrant and an amended warrant by a neutral magistrate, Tpr. Ogden and Inv. Kelly are entitled to qualified immunity for their conduct in this case. Plaintiff's § 1983 claims must be dismissed.

### B. *Section 1985 Claims*

■ Plaintiff's § 1985 claims must also be dismissed. Section 1985 does not provide a remedy for conspiracies that are not based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin,* 403 U.S. at 101–02, 91 S.Ct. 1790. *See also New York State National Organization for Women,* 886 F.2d at 1358; *Baskin v. Parker,* 602 F.2d 1205, 1208–09 (5th Cir.1979); *Tufano v. One Toms Point Lane Corp.,* 64 F.Supp.2d 119, 124 (E.D.N.Y.1999). Plaintiff has not, nor can she, demonstrated that any such animus motivated the remaining defendants in this case.

### IV. **CONCLUSION**

After careful consideration of the objections and submissions of the parties, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that

1. Defendants John J. Ogden, Jr. and Gary Kelly's motion for summary judgment is GRANTED; and

2. The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.