Christine Hill ZANDHRI, Plaintiff

v.

Douglas DORTENZIO,
et al., Defendants

No. CIV.A.3:99 CV 1776 (CFD).

United States District Court,
D. Connecticut.

Oct. 31, 2002.

John R. Williams, Williams & Pattis, New Haven, CT, William Sylvester Palmieri, New Haven, CT, for Plaintiff.

Scott M. Karsten, Nicole D. Dorman, Sack, Spector & Karsten, West Hartford, CT, for Defendants.

### RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Christine Hill Zandhri ("Zandhri"), a former police officer of the Wallingford Police Department, brought this action against its Chief of Police,

Douglas Dortenzio ("Chief Dortenzio"), its Deputy Chief of Police, Donald McNeil ("McNeil"), and two other Wallingford police officers, Lieutenant Thomas Curran ("Curran") and Lieutenant Peter Cameron ("Cameron") pursuant to 42 U.S.C. § 1983, alleging that they violated certain of her rights under the U.S. Constitution and Connecticut state law. Pending is the defendants' Motion for Summary Judgment [Doc. # 27].

## I. Facts [1]

In June 1995, Zandhri was hired as a police officer for the Wallingford Police Department in Wallingford, Connecticut. After graduating from the police academy and completing the department's "Field Training Program," she was assigned to general police patrol duties as a probationary police officer.[2] While Zandhri was a probationary police officer, she was a subject of four internal affairs investigations and two criminal investigations by her department in late 1996 and early 1997. Each is related to Zandhri's domestic disputes with her husband at the time of the investigations, each is relevant to her claims in this case, and each is discussed below.

The first internal affairs investigation, "IA 96-44," was conducted by defendant Lieutenant Curran and arose from a complaint made to the Wallingford Police Department by Zandhri's then-husband, Paul Hill ("Hill"). Hill called the Wallingford police on the night of October 5, 1996 and reported that upon finishing her shift duties that night, Zandhri went to a local bar with two of her fellow officers and then drove while under the influence of alcohol. The ensuing investigation consisted of interviews with Hill, Zandhri, the officers who were with her at the bar, other officers who had talked with Zandhri that night, and a supervisory officer. The investigation did not conclude that Zandhri had driven while under the influence of alcohol, but did find that she had spoken to a fellow officer over a police telephone line in an "unprofessional and inappropriate" manner in violation of police department regulations.[3] Several of the other officers involved-including the supervisory officer-were also found to have committed various violations of police department regulations, related to the events of that evening.

The first criminal investigation of Zandhri was undertaken by defendant Lieutenant Cameron and was in response to a complaint of domestic violence made to the Wallingford Police Department, also by Hill, on October 16, 1996. During that night, Hill and Zandhri had argued at their home about the recent filing of a divorce action by Hill, and a physical confrontation occurred while their children were at home. The ensuing investigation by Cameron consisted of an interview with Hill and an examination of his injuries, an interview of Zandhri by Cameron and defendant McNeil, a statement under oath from Hill,[4] a visit to Hill and Zandhri's home on October 17, 1996, and a review of an audiotaped recording (made secretly by Hill) of the dispute. Cameron then prepared a

---

**1.** The following facts are based on the parties' Local Rule 9(c) Statements and other summary judgment papers and are undisputed unless otherwise indicated.

**2.** New officers of the Wallingford Police Department are required to serve a two-year probationary period, but the record does not make clear its terms.

**3.** This finding related to Zandhri's personal conversation on the police telephone line with another officer.

**4.** A written statement was also obtained from Zandhri on October 17, but she claims it was after the application for the warrant was presented to the judge.

warrant application for Zandhri's arrest for disorderly conduct under Conn. Gen. Stat. § 53a–182, which was signed by a Superior Court Judge, and Zandhri was arrested on October 18, 1996. The charge was subsequently nolled.[5]

The second internal affairs investigation, "IA 96–45," conducted by defendant Lieutenant Curran, also regarded Hill's October 16, 1996 complaint to the Wallingford Police Department and additionally concerned Hill's report that domestic violence had occurred on October 5, 1996, after Zandhri learned that Hill had reported her to the police. Curran's investigation consisted of a review of Cameron's criminal investigation of the events of October 16 and an additional interview with Zandhri. The investigation concluded that domestic violence had occurred between Hill and Zandhri on October 16, 1996 and October 5, 1996 and found that Zandhri's "conduct under the circumstances reflects a propensity for violence attributable to the lack of self control and prudent judgment" and that Zandhri had engaged in conduct "unbecoming an officer" in violation of police department regulations.

The third internal affairs investigation, "IA 96–46," conducted by Sergeant Robert Flis (not a defendant here), was in response to an October 29, 1996 complaint made by Michael Scafidi, a friend of Hill's, concerning Zandhri's telephone call to Scafidi in which she discussed an ongoing investigation of Hill and Scafidi by the Wallingford Police Department involving a stolen motorcycle. This internal affairs investigation found that Zandhri had improperly given Scafidi information about the motorcycle investigation which could

have jeopardized it. The internal affairs investigation also found that Zandhri had made a derogatory comment about a superior officer. The investigation concluded that Zandhri had engaged in conduct "unbecoming an officer" in violation of police department regulations.

The last internal affairs investigation, "IA 96–47," also conducted by Sergeant Flis, concerned an October 30, 1996 complaint from a state prosecutor regarding conversations among Zandhri, her mother, the prosecutor, and the prosecutor's secretary about the disorderly conduct charge. The prosecutor had claimed that Zandhri's mother called the prosecutor's office twice and was offensive and that Zandhri had called the secretary, was "very rude," and asked why her husband had not been arrested. The prosecutor subsequently withdrew the complaint and the investigation was closed.

Finally, Zandhri was the subject of a second criminal investigation undertaken as a result of a report to the Wallingford Police Department by Hill on January 13, 1997 regarding the domestic dispute that occurred on October 5, 1996–the night Hill had previously reported to the police that Zandhri drove while under the influence of alcohol, and which was the subject of the first and second internal affairs investigations. That criminal investigation resulted in Sergeant Flis' January 29, 1997 warrant application for Zandhri's arrest. However, the prosecutor declined to approve the warrant application.

In January 1997, following these internal affairs and criminal investigations, Chief Dortenzio referred Zandhri to a psychologist for a "fitness for duty examination."

**5.** "A nolle is, except when limited by statute or rule of practice; see, e.g., General Statutes § 54–56b and Practice Book § 726; a unilateral act by a prosecutor, which ends the 'pending proceedings without an acquittal and without placing the defendant in jeopardy.'" *Cislo v. City of Shelton,* 240 Conn. 590, 692 A.2d 1255, 1260 n. 9 (1997) (quoting *State v. Lloyd,* 185 Conn. 199, 440 A.2d 867, 868 (1981)).

The psychologist concluded in her report that Zandhri was only "conditionally fit for duty as a police officer."[6] A proposed agreement was drafted by the Town of Wallingford which set forth recommendations by the psychologist as conditions of Zandhri's continued employment as a police officer, but Zandhri refused to sign it.[7] On March, 12, 1997, Chief Dortenzio terminated Zandhri's probationary employment with the Wallingford Police Department.

Zandhri's complaint here alleges that, in violation of the U.S. Constitution, the defendants subjected her to false arrest, warrantless arrest, unlawful seizure, and malicious prosecution, and deprived her of her First Amendment rights, right to due process, right to equal protection, and right to privacy. In addition, Zandhri alleges false arrest, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, negligence, and violations of her rights to due process, equal protection, and privacy under Connecticut common law and the Connecticut constitution.

The defendants have filed a motion for summary judgment on the grounds that (1) Zandhri has failed to create a genuine issue of material fact that the defendants violated her rights under the U.S. Constitution or Connecticut law; and (2) the defendants are entitled to qualified immunity on the section 1983 claims. At the outset, the Court grants, absent objection, the motion for summary judgment as to Zandhri's First Amendment and federal right to privacy claims, as Zandhri has

failed to address these in her opposition to the defendants' motion for summary judgment.[8] The Court will address the remaining claims below.

## II. Summary Judgment Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (citation and internal quotation marks omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party has "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Ca-*

---

6. Zandhri disputes this fact in her Local Rule 9(c) statement, but has not presented any evidence in contravention.

7. Zandhri disputes this fact in her Local Rule 9(c) statement, but has not presented any evidence in contravention.

8. Additionally, though the plaintiff mentions the defendants' "unlawful, warrantless entry" by Cameron and McNeil into her home to interview her on October 17, 1996 in her opposition to the defendants' motion for summary judgment and in her deposition, her complaint contains no allegations of a Fourth Amendment violation for such entry. Accordingly, the Court does not treat this as an alleged cause of action.

*trett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992).

## III.  Discussion

### A.  Section 1983 Claims

Pursuant to 42 U.S.C. § 1983, Zandhri raises false arrest, warrantless arrest, malicious prosecution, due process, and equal protection claims.[9]  Zandhri's false arrest, warrantless arrest, and malicious prosecution claims appear to relate to her arrest on October 18, 1996 for disorderly conduct.[10]  Additionally, though Zandhri does not specify which conduct by the defendants is the basis for her due process and equal protection claims, those claims appear to relate to her arrest, her internal affairs investigations and criminal investigations, her referral to the psychologist, and her termination.  The Court will address each claim below.

At the outset, however, the Court notes that, although Zandhri alleges that each of the defendants committed all the constitutional violations set forth in her complaint, Zandhri has failed to particularize the claims as to each defendant.  For example, though Zandhri appears to claim that all of the defendants unlawfully arrested and maliciously prosecuted her, she has not produced any evidence that Chief Dortenzio or Curran were involved in her arrest or the criminal investigation that led to it. Additionally, though Zandhri claims in her deposition that each of the defendants subjected her to "extended, invasive investigations," it is apparent that the internal affairs investigations were conducted by Curran and non-defendant Sergeant Flis. The Court must follow section 1983's requirement of establishing liability as to particular individuals and its limitations as to supervisory liability.  *See, e.g., Provost v. City of Newburgh et al.,* 262 F.3d 146, 154 (2d Cir.2001) (stating that personal involvement of defendants in alleged constitutional deprivations is required under section 1983 and may be established by evidence that the defendant "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring"). Accordingly, the Court will examine the alleged constitutional violations in the context of the evidence presented as to each particular defendant's involvement in the different aspects of the case.  However,

---

**9.**  Zandhri has also referred to an "unlawful seizure" claim, but does not address it as different from her false arrest, warrantless arrest, and malicious prosecution claims in either her complaint or her opposition to the motion for summary judgment.  Accordingly, the Court will not address it as a separate claim.

**10.**  Though Zandhri claims that she was "subjected" to a second warrant application on January 29, 1997, Zandhri makes no claim that she was actually arrested pursuant to that warrant, which was not signed by a prosecutor or judge.  Therefore, the Court will only consider Zandhri's false arrest, warrantless arrest, and malicious prosecution claims as to her arrest on October 18, 1996 for disorderly conduct.

the conclusions that follow as to the propriety of summary judgment would apply to all the defendants.

### 1. False Arrest and Warrantless Arrest [11]

■ The Fourth Amendment to the United States Constitution provides that no person may be subjected to unreasonable seizures. This protection includes the right to be free from arrests without probable cause.[12] *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). Generally, probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. "The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983).

As noted above, Zandhri challenges the constitutionality of her arrest on October 18, 1996 for disorderly conduct. A person is guilty of disorderly conduct under Connecticut law:

> when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another per-

son; or (3) makes unreasonable noise . . . .

Conn. Gen.Stat. § 53a–182. Zandhri argues that the warrant application for her arrest contained deliberate, material misrepresentations and omissions and failed to establish probable cause of disorderly conduct. The defendants argue that they are entitled to qualified immunity as to Zandhri's arrest. The Court will address each of these points below after a general discussion of qualified immunity.

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The burden of raising and establishing the affirmative defense of qualified immunity, either in a motion for summary judgment or at trial, rests on the defendants. *See Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir.1997).

When considering the issue of qualified immunity, a court first determine whether the evidence, viewed in the light most favorable to the plaintiff, demonstrates that the officer's conduct violated a constitutional right. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. If so, the court must then

---

**11.** There is no genuine issue of material fact that Zandhri was arrested for disorderly conduct pursuant to a warrant on October 18, 1996. *See* Pl.'s Mem. Opp'n. Mtn. Summ. J. at 3. Zandhri's "warrantless arrest" claim appears to be an allegation that the warrant application contained material misrepresenta-

tions and omissions, otherwise known as a *Franks* claim. The Court will address this aspect of the claim below.

**12.** In the context of § 1983 civil actions, this constitutional tort has become known as one for "false arrest."

determine whether "[t]he contours of the right [were] sufficiently clear that a reasonable official would have underst[ood] that what he [did] violate[d] that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In essence, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. If the law was clearly established that the officer's conduct violated a constitutional right, qualified immunity is inappropriate. If, however, "the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful," qualified immunity is appropriate. *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727.

As noted above, Zandhri's section 1983 claim for false arrest derives from an individual's right to remain free from arrest absent probable cause. *See Weyant,* 101 F.3d at 852. This right, so broadly defined, was clearly established at the time of Zandhri's arrest. *See Lee,* 136 F.3d at 102. However, the Court's inquiry into the existence of a clearly established right requires a more narrow scope. "[A court] must consider whether a reasonable officer could have believed that the *specific action taken by [the defendant]* was foreclosed by clearly established law." *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002) (emphasis added); *see also Saucier,* 533 U.S. at 201, 121 S.Ct. 2151 ("This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition."). Accordingly, the Court must determine whether a reasonable officer could conclude that the circumstances here established the necessary probable cause for Zandhri's arrest. *See Weyant,* 101 F.3d at 852.

In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the U.S. Supreme Court held that police officers may be entitled to qualified immunity for arrests following the issuance of warrants by a judge or magistrate. The Court explained that the issue is "whether a reasonably-trained officer in [the defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 475 U.S. at 345, 106 S.Ct. 1092. It concluded that the officer "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer could have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341, 106 S.Ct. 1092. The Second Circuit elaborated on *Malley* by stating that:

A police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages. *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991). Police activity conducted pursuant to a warrant rarely will require any deep inquiry into reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith. *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* The court's inquiry into reasonableness is limited to determining whether a reasonably well-trained officer would have known that the warrants were illegal despite the

magistrate's authorization. *Id.* at 922 n. 23, 104 S.Ct. 3405.

*Simms v. Village of Albion, New York,* 115 F.3d 1098, 1106 (2d Cir.1997).

Thus, the issuance of a warrant for Zandhri's arrest for disorderly conduct on October 18, 1996 creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause to support it. *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). The Court must next examine whether there is evidence to overcome this presumption such that a reasonable juror could conclude that the officers' reliance on the judge's probable cause determination and on the technical sufficiency of the warrant was objectively unreasonable. *Id.* As indicated by the Second Circuit, this inquiry involves an examination of whether a reasonably well-trained officer would have known that the warrant was illegal despite the judge's authorization.

A plaintiff may mount such a challenge by making a " 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.' " *Golino,* 950 F.2d at 870 (quoting *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). "Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, . . . the shield of qualified immunity is lost." *Golino,* 950 F.2d at 871. Here, Zandhri claims that the warrant application contained deliberate, material misrepresentations and omissions. The Second Circuit has summarized the appropriate analysis as follows:

A section 1983 plaintiff challenging a warrant on this basis must make the same showing that is required at a suppression hearing under *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978): the plaintiff must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause. *Golino,* 950 F.2d at 870–71; *see Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674. Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof. *See Franks,* 438 U.S. at 171, 98 S.Ct. 2674. Moreover, when police officers move for summary judgment on the basis of qualified immunity, "[p]laintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue." *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992). Disputed issues are not material if, after crossing out any allegedly false information and supplying any omitted facts, the "corrected affidavit" would have supported a finding of probable cause. *Soares v. State of Connecticut,* 8 F.3d 917, 920 (2d Cir. 1993); *Cartier,* 955 F.2d at 845.

*Velardi v. Walsh,* 40 F.3d 569, 573–74 (2d Cir.1994).

The warrant application and affidavit submitted here by Lieutenant Cameron indicates that Zandhri's then-husband, Paul Hill, complained to the Wallingford Police Department on October 16, 1996 regarding a fight between Hill and Zan-

dhri. Specifically, the warrant application states that Hill reported that he served Zandhri with divorce papers on October 11, 1996, that there had been ongoing verbal confrontations between Hill and Zandhri since that time, and that Hill had surreptitiously audiotaped several of those confrontations. The warrant application further recites that on October 16, 1996, when Zandhri discovered Hill's audiotaping of their conversation, Zandhri became violent. Specifically, Hill reported that Zandhri "threw" a couch out of her way in an attempt to get the audiotape recorder, grabbed Hill by his shirt when he attempted to get away, tried to drag Hill off a set of stairs, blocked Hill from exiting the door, grabbed his jaw, grabbed his pager, and threw the pager at his truck as he drove away from their home. Hill also reported that his shirt had been ripped during this incident. The warrant application also indicates that Lieutenant Cameron corroborated certain of Hill's allegations through his observation of fresh scratch marks on Hill's hand and neck, Hill's torn shirt, pieces of Hill's pager in their driveway, and his review of the audiotaped recording of the dispute between Zandhri and Hill that indicated "banging noises consistent with a struggle when things are being hit by struggling parties." Defs. Ex. B. Finally, the warrant application states that Lieutenant Cameron and Deputy Chief McNeil attempted to speak with Zandhri at her home early in the morning of October 17, 1996, that she declined to do so at that time, and that in a phone call later that morning she indicated that she wished to come to the department to give a statement.

In her deposition testimony, Zandhri identified the following "misrepresentations and omissions" made by Lieutenant Cameron in the warrant application: whether Hill had secretly audiotaped conversations between him and Zandhri before, the description of her "throwing" a couch out of the way rather than moving it, some of the particular aspects of the physical confrontation between Zandhri and Hill, the description of the time of day officers McNeil and Cameron came to her house to interview her following the incident, and the reasons why Zandhri did not give a statement to the officers that night. *See* Defs.' Ex. A., Zandhri Dep. at 121–135. However, even assuming Zandhri's testimony to be true, the Court does not find these "misrepresentations and omissions" to be material. *See, e.g., Velardi*, 40 F.3d at 573–75. Zandhri has not created a genuine issue of fact that, after deleting the allegedly false information and supplying any omitted facts, the "corrected affidavit" would not have supported a finding of probable cause. *See id.* That is, even with deleting the reference to previous audiotaping of conversations, changing the time of day the investigating officers came to Zandhri's house and the description of Zandhri moving the couch, applying Zandhri's version of why she refused to speak to the officers that evening, and altering the description of the struggle between Hill and Zandhri, the "corrected" warrant application would still contain sufficient evidence to support a finding of probable cause that Zandhri had committed the offense of disorderly conduct.

Additionally, though the status of the individual reporting the facts on which an officer bases his determination of probable cause is relevant to determining whether that officer's actions were objectively reasonable, the circumstances here do not suggest unreasonable reliance by Cameron on Hill's report. *See Caldarola*, 298 F.3d at 162. Where an anonymous informant provides information, that informant's veracity and reliability must be carefully scrutinized. *See id.; Gates*, 462 U.S. at 238–39, 103 S.Ct. 2317; *see also Florida v.*

*J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). So too with confidential informants. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). However, "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability... rigorous scrutiny of the basis of his knowledge [is] unnecessary." *Gates*, 462 U.S. at 233–34, 103 S.Ct. 2317. "In the case of 'an unidentified bystander with no apparent motive to falsify,' ... the information they provide has 'a peculiar likelihood of accuracy.'" *Caldarola*, 298 F.3d at 162 (quoting *United States v. Rollins*, 522 F.2d 160, 164 (2d Cir.1975)).

Here, the information that formed part of the probable cause submitted by Lt. Cameron was obtained from an interview with and sworn statement by the victim-Paul Hill.[13] The Second Circuit has held that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995). "[A] police officer may rely upon the statements of victims and witnesses to determine the existence of probable cause for the arrest, *see Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000), regardless of the ultimate accurateness or truthfulness of the statements. *See Bernard v. United States*, 25 F.3d 98, 103 (2d Cir.1994)." *Hotaling v. LaPlante*, 167 F.Supp.2d 517, 521 (N.D.N.Y.2001); *Miloslavsky v. AES Eng'g Soc'y*, 808 F.Supp.

351, 355 (S.D.N.Y.1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), *aff'd*, 993 F.2d 1534 (2d Cir. 1993).

While here there may have been some justified skepticism as to Hill's complete veracity because he and Zandhri were involved in a divorce, *see, e.g., Golino*, 950 F.2d at 866 (finding relevant to probable cause determination that warrant affidavit contained statements from a complainant with "whom the police knew [the plaintiff] to be involved in acrimonious divorce proceedings"), Hill's sworn statement was corroborated by Cameron's first-hand observation of his injuries, examination of the scene of the alleged crime (including confirmation of certain corroborating real evidence such as Hill's torn shirt and the broken pager), and his review of an audiotape of the events. Thus, any apparent concern that Hill was untruthful or unreliable was addressed by the corroborative evidence. Furthermore, the defendants were "'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Caldarola*, 298 F.3d at 167–68 (quoting *Ricciuti*, 124 F.3d at 128).

The warrant thus contains sufficient evidence by which a reasonably well-trained police officer could conclude that there existed probable cause to support the warrant for Zandhri's arrest for disorderly conduct. That is, a reasonably-trained officer in the defendants' position would have believed that the warrant application established that, "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [Zandhri] engag[ed] in fighting or in violent, tumultuous or threatening behavior" or "by of-

---

**13.** Although the arrest warrant affidavit does not state that Hill gave a statement under oath, one was made on October 17, 1996 at

12:22 a.m., before the application for a warrant was made.

fensive or disorderly conduct, annoy[ed] or interfere[d] with another person"or "ma[de] unreasonable noise." Conn. Gen. Stat. § 53a–182. Moreover, Zandhri has not set forth any evidence indicating that Lieutenant Cameron and others who may have been involved in the application for the arrest warrant knew or should have known any other information which would indicate that the warrant lacked probable cause. Under these circumstances, the warrant sets forth an "objective basis supporting probable cause" for Zandhri's arrest for disorderly conduct. *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992); *see Simms*, 115 F.3d at 1106. Accordingly, the defendants are entitled to qualified immunity for that arrest.[14]

### 2. Malicious Prosecution

■ The defendants also argue that they are entitled to qualified immunity as to Zandhri's § 1983 claim of malicious prosecution. A § 1983 claim based on malicious prosecution is based on the four elements of the Connecticut common law tort for malicious prosecution. *See, e.g., Janetka v. Dabe*, 892 F.2d 187, 189 (2d

Cir.1989). Under Connecticut law, "[a]n action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.*, 187 Conn. 444, 446 A.2d 815, 817 (1982).[15]

For the reasons noted with regard to Zandhri's false arrest claim, the Court finds that there are no genuine material issues of fact that defendants reasonably believed they had probable cause to commence or continue criminal proceedings against Zandhri. *See, e.g., Loria v. Gorman*, No. 01–7964, 2002 WL 31122154, at *16 n. 9 (2d Cir. Sept.26, 2002) (applying similar analyses in examining probable cause to arrest and probable cause to prosecute). Thus, the defendants are entitled to qualified immunity with respect to Zandhri's section 1983 malicious prosecution claim.

14. This qualified immunity analysis in the context of considering summary judgment is also subject to the requirement that the material facts upon which qualified immunity is based be undisputed. *See Cartier*, 955 F.2d at 844–45. As noted in the discussion in the text, *supra*, even though Zandhri disputes some of the facts recited in the warrant application and also which would be relevant to the knowledge of the officers involved, those disputed facts are not material to a finding of probable cause or qualified immunity.

15. "In order to allege a cause of action for malicious prosecution under § 1983, [a plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was … a sufficient post-arraignment liberty restraint to implicate the plaintiff's fourth amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000) (citing *Murphy v. Lynn*, 118 F.3d

938, 944–46 (2d Cir.1997)). "The fourth amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person-i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a fourth amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.' " *Id.* (quoting *Singer*, 63 F.3d at 116, and citing *Murphy*, 118 F.3d at 944). "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 [also] must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Id.* (citation omitted). The Court need not address whether Zandhri has satisfied this element, however, in light of its finding *infra* as to probable cause.

### 3. Due Process

■ Zandhri also claims that the defendants violated her right to substantive due process.[16] To succeed on her substantive due process claim, Zandhri must show that the defendants' conduct was "arbitrary, conscience-shocking, or oppressive in a constitutional sense," and not merely "incorrect or ill-advised." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995); *see also Lewis*, 523 U.S. at 846, 118 S.Ct. 1708 ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.") (internal quotation marks omitted); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262–63 (2d Cir. 1999) ("Substantive due process is an outer limit on the legitimacy of governmental action .... Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."). The Court must be "cognizant of the Supreme Court's admonition that 'executive action challenges raise a particular need to preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to ... a font of tort law.'" *Smith v. Half Hollow Hills Central Sch. Dist.*, 298 F.3d 168, 173 (2d Cir.2002) (affirming district court's dismissal of seventh grade student's substantive due process claim against teacher who slapped him).

Though Zandhri summarily states in her opposition to the motion for summary judgment that "[t]he present case obviously meets the test" for a substantive due process violation, Pl.'s Mem. Opp'n. Mtn. Summ. J. at 16, she does not identify-either in her complaint or in her opposition-the specific conduct by the defendants that violated her right to substantive due process. Nonetheless, as noted above, the Court has examined whether her arrest, the internal affairs and criminal investigations of Zandhri, her referral to a psychologist for a "fitness for duty examination," or her termination amounted to a substantive due process violation either separately or in the aggregate.[17] Of course, in the context of considering the defendants' motion for summary judgment, the Court must construe the facts in the light most favorable to Zandhri. *See Aldrich*, 963 F.2d at 523.

In light of the Court's finding that there is no genuine issue of material fact that the defendants reasonably believed that probable cause existed for Zandhri's arrest for disorderly conduct on October 18, 1996, the Court finds that, as a matter of law, her arrest certainly was not a violation of substantive due process. As to the internal affairs investigations of Zandhri and the criminal investigation of her regarding

16. While the defendants discuss Zandhri's due process claim as one of procedural due process in their summary judgment papers, Zandhri refers to her claim in her opposition to the motion for summary judgment as a substantive due process claim. *Compare* Defs.' Mem. Supp. Mtn. Summ. J. at 45–51, *with* Pl.'s Mem. Opp. Mtn. Summ. J. at 15–16. In accordance with Zandhri's characterization, the Court will treat her claim as one of substantive due process.

17. On page 4 of her opposition to the defendants' motion for summary judgment, Zandhri asserts that Chief Dortenzio "released privileged and confidential therapy informa-

tion about Zandhri to the news media." Zandhri refers to this as "an extraordinarily outrageous breach of law." It appears that this claim relates to the state law causes of action for defamation and privacy. However, to the extent Zandhri is alleging that Chief Dortenzio's conduct constituted a substantive due process violation, the Court concludes that Zandhri has failed to produce any evidence in support of her allegation that *Chief Dortenzio* released the information to the news media or that if he or another defendant did so that would change the Court's conclusion as to substantive due process.

the alleged October 5, 1996 domestic dispute with Hill, the Court also finds that Zandhri has not presented any evidence indicating that the commencement of the investigations, the manner in which they were conducted, or the sanctions resulting from the investigations were arbitrary, conscience-shocking, or outrageous. Based on the evidence presented, even when viewed in a light most favorable to Zandhri, no reasonable juror could conclude that there was no substantial basis for each of the investigations or that due process was violated. For example, Zandhri conceded at her deposition that initiating the investigations was justified and has presented no evidence that they were improperly conducted or that the conclusions and sanctions of the investigations were baseless or capricious. Also, two of the internal affairs investigations-IA 96–46 and IA 96–47–were conducted by Sergeant Flis, who is not a defendant here. Thus, his conduct is not challenged. As to Lieutenant Curran's internal affairs investigations-IA 96–44 and IA 96–45–the material facts are also uncontroverted; IA 96–45 was, in the main, based on the domestic dispute of October 16, for which Zandhri's arrest was supported by probable cause, and as to IA 96–44, Zandhri did not dispute the inappropriateness of the telephone call that supported the finding against her. Accordingly, these investigations do not rise to the level of a due process violation. *See, e.g., Smith,* 298 F.3d at 173 ("The protections of substantive due process are available only against egregious conduct which goes beyond merely offend[ing] some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience.") (citations and internal quotation marks omitted).

The Court also concludes that Zandhri has not presented any evidence that Chief Dortenzio's referral of her to a psychologist for a "fitness for duty examination" was arbitrary, conscience-shocking, or outrageous. In her deposition, Zandhri conceded that it was appropriate for Chief Dortenzio to refer her to the psychologist for the examination and she "voluntarily agreed to go."

Zandhri has also failed to create a genuine issue of material fact that the circumstances of her termination, including the request that she submit to certain conditions of employment, were "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale,* 170 F.3d at 262–63. Based on the considerable evidence of questionable conduct disclosed by the internal affairs investigations and the criminal charge, it was certainly not "outrageous" for Chief Dortenzio to seek a psychological examination of Zandhri or to require that treatment be a part of continued employment of her as a police officer, especially given the nature of the duties of a member of law enforcement. Although Zandhri may dispute whether she deserved to be terminated, that event-by itself-is also not enough to meet the standard for a due process violation.

Finally, the Court concludes that the undisputed facts of all of these events-the investigations, arrest, psychological exam, and termination-even when considered in the aggregate, and even when those facts and the disputed ones are considered in a light most favorable to Zandhri, could not rise to the level of a substantive due process violation.

Accordingly, Zandhri has not presented sufficient evidence for a trier of fact to find a substantive due process violation, and summary judgment is warranted as to that claim.

## 4. Equal Protection [18]

■ The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." This provision is universal in its application to "all persons within the territorial jurisdiction, without regard to any differences of race, of color, ... of nationality[, or of religion]; and the protection of the laws is a pledge of the protection of equal laws." *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

The Equal Protection Clause directs that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124 (1940). "It is well established that a claimant under the Fourteenth Amendment's Equal Protec-

tion Clause ... must establish intentional discrimination." *Ricketts v. City of Hartford*, 74 F.3d 1397, 1407 (2d Cir.1996).

Here, Zandhri has presented evidence that (1) the defendants in the case are all male; (2) her husband was not arrested in connection with their October 5, 1996 or October 16, 1996 domestic disputes; and (3) she *believed* that she was treated differently than a male officer would have been with regard to her arrest, internal affairs investigations, criminal investigations, and her termination.[19] However, her conclusory statement as to her belief she was treated differently is not sufficient-absent other evidence-to create a genuine issue of material fact as to her equal protection claim. *See, e.g., Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (conclusory allegations of discrimination insufficient to satisfy non-movant's burden of setting forth specific facts demonstrating existence of genuine issue for trial), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *DeLoraine v. MEBA Pension Trust*, 499 F.2d 49 (2d Cir.), *cert. denied*, 419 U.S. 1009, 95 S.Ct. 329, 42

18. Zandhri does not bring her claim of sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended by the Civil Rights Act of 1991 ("Title VII"). The Court notes, however, that the adverse employment actions challenged by Zandhri would be assessed using the same four-part *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973) test utilized in disparate treatment claims under Title VII.

Under *McDonnell Douglas*, [a] plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to [the] defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. [The] [p]laintiff then must show that the

proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.
*Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir.1999) (internal quotation marks, alterations, and citations omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, while individuals may not be held personally liable under Title VII, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995), they may be so liable in their individual capacity under section 1983.

19. Zandhri specified this claim in this way: her former husband-Hill-had been given "carte blanche" by the defendants in filing his complaints and in the way they were handled.

L.Ed.2d 284 (1974) (mere conclusory statement in affidavit that plaintiff believed he was discriminated against was insufficient to raise genuine issue of material fact as to plaintiff's age discrimination claim). Her remaining evidence also fails to establish a genuine issue of material fact of intentional discrimination on the basis of her gender. There is nothing in the record to suggest that any other individual in Zandhri's position-a probationary police officer-engaging in similar behavior would not have been subject to similar investigation and discipline. To the contrary, several of the male officers involved in the October 5, 1996 incident (regarding the officers' activities at a local bar and in dealing with Zandhri that evening) were investigated and disciplined with regard to their actions. The evidence also indicates that an arrest warrant application was prepared for the arrest of her husband in connection with their October 16, 1996 dispute, but was rejected by the prosecutor (who is not a defendant here) after the charge against Zandhri regarding the dispute was nolled. As to her claim that Hill's complaints to the police department were handled differently, she conceded at her deposition that it was appropriate for each of them to be investigated and has not pointed to any particular aspects of the investigations or their conclusions that create an inference of discriminatory treatment by any of the individual defendants. For example, the October 16, 1996 incident created probable cause for her arrest, and there has been no evidence presented by Zandhri that various aspects of the investigation of the incidents of October 5, 1996 were affected in any way by sexual discrimination. Finally, the fact that the four defendants are male is-by itself-entitled to no evidentiary weight in assessing whether the circumstances alleged create an inference of discrimination.

In support of her equal protection claim, Zandhri has " 'done little more than cite to [her alleged] mistreatment and ask the court to conclude that it must have been related to [her gender]. This is not sufficient.' " *Grillo v. New York Transit Authority,* 291 F.3d 231, 235 (2d Cir.2002) (race discrimination) (quoting *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 104 (2d Cir. 2001)).[20] Thus, her equal protection claim also fails as a matter of law.

## B. State Law Claims

The Court further declines to exercise supplemental jurisdiction over Zandhri's remaining state law claims on the ground that it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford,* 771 F.Supp. 521, 530 (D.Conn.1991) ("[A]bsent unusual circumstances, the court would abuse its discretion were it to retain jurisdiction of the pendant state law claims on the basis of a federal question claim already disposed of . . . ."), *aff'd,* 954 F.2d 63 (2d Cir.1992), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992).

## IV. Conclusion

For the foregoing reasons, the defendants' Motion for Summary Judgment [Doc. # 27] is GRANTED.

The Clerk is directed to close the case.

---

20. The Court would arrive at the same conclusion using *McDonnell Douglas* burden shifting framework. That is, Zandhri has not satisfied her "initial burden of proving by a preponderance of the evidence a prima facie case of discrimination," or shown that the defendant's proffered reasons for the adverse employment actions were "merely a pretext for discrimination." *Heyman,* 198 F.3d at 72.